UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EZECKIAL B. TERRELL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION H-05-0309 |
| | § | |
| JO ANNE B. BARNHART, | § | |
|    Commissioner, Social | § | |
|    Security Administration, | § | |
| | § | |
| Defendant. | § | |

**OPINION ON SUMMARY JUDGMENT**

Plaintiff Ezeckial B. Terrell filed this case under the Social Security Act, 42 U.S.C. § 405(g), for review of the final decision of the Commissioner denying his request for disability insurance benefits and supplemental security income for the period March 2, 2000 through March 31, 2001. The parties have filed motions for summary judgment (Dkts. 11, 14). Having considered the parties' submissions, the administrative record, and applicable law, the court determines that Terrell's motion should be denied and the Commissioner's motion should be granted.

**I.     Background**

Terrell, now 46 years old, filed for disability benefits under Titles II and XVI of the Social Security Act on November 14, 2000 alleging that he had been unable to work since March 2, 2000 due to multiple sclerosis. He was granted disability beginning April 1, 2001. Terrell requested a hearing before an administrative law judge on the denial of his request

for benefits beginning on March 2, 2000. After a hearing, the administrative law judge issued a February 28, 2003 decision rejecting the March 2, 2000 onset date. The Appeals Counsel denied Terrell's request for review on December 6, 2004, making the February 28, 2003 decision final.

**II.   Analysis**

    **A.   Standard of Review**

Section 405(g) of the Social Security Act sets forth the standard of review in this case. The federal courts review the decision of the Commissioner to deny Social Security benefits to determine whether (1) the Commissioner applied the proper legal standard and (2) the Commissioner's decision is supported by substantial evidence. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). Substantial evidence is "more than a scintilla and less than a preponderance." *Masterson*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The court does not reweigh the evidence, try the questions *de novo*, or substitute its own judgment for that of the Commissioner. *Masterson*, 309 F.3d at 272.

In order to qualify for disability benefits, a plaintiff must prove he has a disability, which is defined under the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423 (d)(1)(A) and

1382c(a)(3)(A); *Masterson*, 309 F.3d at 271. The administrative law judge must follow a five-step sequential analysis to determine whether a plaintiff is in fact disabled:

1. Is the claimant currently engaged in substantial gainful activity, *i.e.*, working? If the answer is yes, the inquiry ends and the claimant is not disabled.

2. Does the claimant have a severe impairment? If the answer is yes, the inquiry proceeds to question 3.

3. Does the severe impairment equal one of the listings in the regulation known as Appendix 1? If so, the claimant is disabled. If not, then the inquiry proceeds to question 4.

4. Can claimant still perform his past relevant work? If so, the claimant is not disabled. If not, then the agency must assess the claimant's residual functional capacity.

5. Considering the claimant's residual functional capacity, age, education, and work experience, is there other work claimant can do? If so, claimant is not disabled.

20 C.F.R. §§ 404.1520, 416.920; *Waters*, 276 F.3d at 718. At step five, the burden shifts to the Commissioner to show that employment for the claimant exists in the national economy. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991).

**B.     The Commissioner's Decision and the Evidence of Record**

The administrative law judge engaged in the five-step procedure outlined above. The judge found that Terrell had not engaged in substantial gainful activity since his alleged onset date of March 2, 2000; that Terrell's impairment of multiple sclerosis was severe; that the impairment was not so severe as to meet or equal one of the impairments listed in Appendix 1; that Terrell could not perform his past relevant work, but viewing Terrell's age, education,

and experience in conjunction with the Medical-Vocational Guidelines of Appendix 2, he had a residual functional capacity for sedentary work during the period at issue; and there were such jobs available in the national economy. Based on these findings, the administrative law judge concluded Terrell was not disabled as defined by the Social Security Act for the period March 2, 2000 until April 1, 2001.

Terrell argues that the administrative law judge's decision should be overturned because he disregarded the opinion of Terrell's treating physician and instead relied exclusively on the opinion of a non-examining medical expert, Stephen Goldstein. Terrell further argues that Goldstein's opinion is entitled to very little weight because he is biased in favor of the Commission due to his frequent engagement by the Commission as a paid expert witness.

In support of his position, Terrell submits a "Multiple Sclerosis Residual Functional Capacity Questionnaire" completed by his treating physician, Dr. Rebecca Baumgarner, on January 13, 2003.[1] This questionnaire indicates that Terrell first saw Baumgarner in January 1999. Baumgarner identifies on the form numerous symptoms exhibited by Terrell, including "generalized muscular weakness" with "severe muscle spasms." The questionnaire further indicates that the "earliest date that the descriptions of *symptoms and limitations* in this questionnaire applie[d]" is 1999, and states that Terrell is "unable to work at this time."[2]

---

1  Record, at 155-59.

2  *Id.* at 158 (emphasis in original).

However, nothing in the questionnaire constitutes a medical opinion from Baumgarner that Terrell was unable to perform sedentary work as of March, 2000. The fact that he was experiencing some symptoms and limitations as early as 1999 is not the same as being disabled within the meaning of the Social Security Act. Baumgarner did not specify what symptoms or limitations existed as of 1999 and which developed at a later point. Evidence of subsequent deterioration is not material because it does not relate to the period for which Terrell is seeking benefits. *See Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994); *Haywood v. Sullivan*, 888 F.2d 1463, 1471 (5th Cir. 1989). The 2003 questionnaire is not probative as to the onset of disability, and is not inconsistent with an onset date of April 2001.

Baumgarner's treatment notes bear out the conclusion that Terrell's condition deteriorated after the initial visit in January 1999. Baumgarner's notes indicate that as of September 2000 (seven months after the onset date proposed by Terrell) the patient needed "light duty at work."[3] Baumgarner's November 8, 2000 notes state only that Terrell "may require disability, medicaid."[4] Finally, Baumgarner's notes from October 19, 2001, indicate that petitioner began using a wheelchair in May, 2001 and that he was experiencing "progressive weakness."[5] Baumgarner's treatment notes, made closer to the time period at issue than the 2003 questionnaire, are not inconsistent with an onset date of April 2001.

---

[3]     *Id.* at 134.

[4]     *Id.* at 133.

[5]     *Id.* at 129.

On a form dated December 12, 2000, filled out at Terrell's request to enable him to receive medicaid benefits, Baumgarner indicated that Terrell could not work due to a physical disability, but stated the date of onset as "unknown."[6] This form is conclusory. It contains no description of symptoms, no clinical findings, and no identification of limitations on Terrell's functional ability to perform sedentary work as of March 2000.

Generally, the ALJ must give more weight to a treating physician's opinion than other medical opinions because of the treating physician's greater familiarity with the claimant's medical condition. 20 C.F.R. 404.1527(d)(2), 416.927(d)(2). However, the ALJ "is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). Administrative regulations provide that when an ALJ declines to give a treating physician's opinion controlling weight, the ALJ must consider numerous factors set forth in the regulations, and must give good reasons for the weight assigned to the treating source's opinion. 20 C.F.R. 404.1527(d)(2); *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001). Good cause exists to discount a treating physician's opinion where the opinion is conclusory, unsupported by medically acceptable evidence, or otherwise bereft of substantial support. *Newton*, 209 F.3d at 456. Questionnaires and forms lacking medical and laboratory findings are entitled to little weight, even if prepared by a treating physician. *See Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) (finding no error by the ALJ in rejecting opinion of treating physician because the "ALJ is entitled to

---

[6] *Id.* at 194. It appears that Baumgarner also put an "x" next to the category "able to work 20 hours/week," but attempted to erase it.

determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly"); *Foster v. Halter*, 279 F.3d 348, 356 (6th Cir. 2001); *Deckard v. Apfel*, 213 F.3d 996, 997 (8th Cir. 2000).

Neither the January 2003 questionnaire nor the December 2000 form constitute a medical opinion from Terrell's treating physician that is entitled to any significant weight, much less controlling weight, on the issue of the onset date of Terrell's disability from multiple sclerosis. The ALJ properly relied upon other evidence in the record, including but not limited to the opinion of Goldstein, to make his determination. This case is distinct from *Newton* in that the medical record in this case was not so deficient as to require the ALJ to seek additional evidence before reaching a conclusion.

In reaching his decision, the ALJ considered petitioner's testimony regarding his inability to work from March 2, 2000 until April 1, 2001 due to multiple sclerosis. Petitioner testified that his symptoms began in January 1999. Until November 1999 he was a student and had seizures or muscle spasms in class two times and missed 10-11 days of the school year. After he began work in November 1999 he missed about one day a week and was tired, stressed out, and fatigued. He used a cane and needed 3 breaks of 30 minutes of more during a day, would have to lie down during the day, and dropped things. He testified he had numbness, joint pains, headaches, and blurred vision, but he admitted he was able to sweep, mop, vacuum, do laundry and go shopping with his roommate. He testified that he could lift 10 pounds on occasion, sit for 2 hours, and walk an hour and half. The ALJ found that

"[a]lthough the claimant appeared to be credible, his allegations of a total disability from March 2, 2000, until April 1, 2001, are not supported by the medical evidence of record."

In this case, the medical evidence of record includes the reports of two consultive medical examinations, in addition to the testimony of Goldstein. Dr. Anigbogu examined petitioner on February 26, 2001, just two months prior to date of onset determined by the ALJ. At that time, Terrell was living alone in a trailer with four steps. Anigbogu determined:

> [Petitioner] is independent in bed mobility, transfer and dressing. Ambulates independently when requested but uses a cane; has normal tandem gait and cadence. His sitting and static standing balance is good but dynamic standing balance is fair. Able to partially toe and heel walk and ½ stoop while using a cane but unable to hop.[7]

As the ALJ specifically noted, Anigbogu's examination revealed that Terrell's "strength testing is 4/5 in all extremities." Anigbogu's findings support a determination that petitioner could perform sedentary work from March 2000 until April 2001.[8]

Another consultive examination was conducted by Dr. Gibson in November, 2001. Gibson noted that petitioner was diagnosed with multiple sclerosis in 1999, but recognized that the condition is progressive. Gibson also noted that petitioner began using a wheelchair in May, 2001. While Gibson's report supports a finding that petitioner was disabled as of

---

[7] *Id.* at 118.

[8] Sedentary work involves lifting no more than 10 pounds at a time, occasionally carrying/lifting such things as docket files, ledgers and small tools, as well as sitting and occasionally walking and standing. *See* 20 C.F.R. §§ 404.1567, 416.967.

November 2001, his report is consistent with a finding that petitioner had the residual functioning capacity to perform sedentary work prior to April 2001.[9]

The ALJ called Dr. Goldstein to testify at the hearing. Goldstein reviewed the medical evidence in the record: that Terrell began experiencing symptoms in 1999, but his symptoms gradually progressed; that as of June 30, 2000, diagnostic tests were still being conducted; and that Anigbogu's and Gibson's examination findings reflected the progression of symptoms from February 2001, when Terrell was walking with a cane, through November 2001, at which point he was in a wheel chair. Goldstein opined that the loss of ambulation, which occurred in May 2001, signified the point at which Terrell's condition became equivalent to the disability listing for multiple sclerosis.

Contrary to Terrell's characterization, Goldstein did not base this opinion as to Terrell's ability to do work at a sedentary level solely on the lack of a definitive diagnosis, but primarily on the fact that Terrell was able to walk with a cane prior to May 2001. The vocation expert then testified that a person of Terrell's age, education, and training would be able to perform sedentary work that is available in the national economy, and that the need to walk with a cane would not interfere with the performance of such work.

Terrell's argument that Goldstein's opinion should be disregarded entirely because he is biased in favor of the Commission is not grounds for remand or reversal of the ALJ's

---

[9] Record, at 150-53.

decision. Terrell's argument is essentially one of expert credibility.[10] Such determinations are the province of the ALJ and will not be second-guessed by the court. *Greenspan*, 38 F.3d at 237. In addition, Terrell has not shown that he was prejudiced by Goldstein's testimony. In other words, in light of the medical evidence of record there is no showing that absent Goldstein's allegedly objectionable testimony the ALJ would have ruled in Terrell's favor. *See Carey v. Apfel*, 230 F.3d 231, 143 (5th Cir. 2000).

Petitioner suffers from a progressive disease. In such cases, it is often difficult to establish the date the disease actually reached the disability level. The petitioner's allegation, his work history, and the medical evidence are relevant to the determination of disability onset, but the medical evidence is the primary element. *Spellman v. Shalala*, 1 F.3d 357, 361 (5th Cir. 1993); *see also* Social Security Ruling 83-20. The date the petitioner stopped working and his allegation of onset are not controlling unless consistent with medical evidence. *Id.* Where the medical evidence is not clear, the ALJ must call on the services of a medical advisor to make inferences from the record. 1 F.3d at 362 ("in cases involving slowly progressive impairments, when the medical evidence regarding the onset date of a disability is ambiguous and the Secretary must infer the onset date, SSR 83-20 requires that the inference be based on an informed judgment. The Secretary cannot make such an inference without the assistance of a medical advisor").

---

[10] Terrell's counsel did not make any objection to the testimony at the ALJ hearing, or before the Appeals Council.

10

In evaluating the consultive medical opinions of record and calling a medical advisor to testify, the ALJ in this case followed the procedure for assessing slowly progressive impairments as required by *Spellman*. The ALJ was not required to accept Terrell's subjective assessment of his limitations during the period at issue or the conclusory, unsupported statements of Baumgarner because such evidence was contradicted by Terrell's medical records.

### III.  Conclusion

The ALJ did not err in ruling that the onset date of Terrell's disability was April, 1, 2001, because there was substantial medical evidence in the record to support the conclusion and the proper legal standards were applied. Therefore, plaintiff's motion for summary judgment is denied, and defendant's motion for summary judgment is granted.

Signed at Houston, Texas, on July 12, 2005.

Stephen Wm Smith
United States Magistrate Judge